UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

TOWN OF HEMPSTEAD,

                     Plaintiff,

    -against-

OCEANSIDE INDUSTRIAL STORAGE INC.,
STEPHEN P. KOPSICK TRUSTEE OF THE
MICHAEL LOGUIDICE FAMILY TRUST,
MAAD CONSTRUCTION INC., MICHAEL
LOGUIDICE TRUST, CONROC RECYCLING INC.,
IROC INDUSTRIES, INC., CONROC
CONSTRUCTION, INC., NERAK CONSTRUCTION
SERVICES, MICHAEL LOGUIDICE, SR., DOROTHY
LOGUIDICE, ANDREA DOREEN LOGUIDICE, and
MICHAEL LOGUIDICE, JR.,

                     Defendants.

---------------------------------------------------------------------X

Civil Action No.:

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiff, Town of Hempstead, alleges as follows:

## INTRODUCTION

1.     Plaintiff Town of Hempstead ("Plaintiff" or "TOH"), seeks declaratory and

injunctive relief in this citizen suit pursuant to the Federal Clean Water Act ("CWA"), and Clean

Air Act ("CAA"), brought against Defendants, Oceanside Industrial Storage Inc. ("OCEANSIDE

INDUSTRIAL"), Stephen P. Koisick As Trustee Of The Michael Loguidice Family Trust

("KOPSICK"), MAAD Construction Inc. ("MADD CONSTRUCTION"), Michael Loguidice

Trust ("ML TRUST"), CONROC Recycling Inc. ("CONROC RECYCLING"), IROC Industries,

Inc. "(IROC INDUSTRIES"), Conroc Construction Inc. ("Conroc Construction"), Nerack

Construction Services ("NERACK CONSTRUCTION"), Michael Loguidice, Sr. ("MLS"),

Dorothy Loguidice ("DL"), Michael Loguidice, Jr. ("MLJ"), and Andrea Doreen Loguidice

("ADL") (collectively "Defendants"), seeking to compel Defendants to comply with certain duties under, *inter alia*, the CWA and CAA.

## NATURE OF ACTION

2.      This is a suit brought pursuant to Section 505(a)(1) of the Federal Clean Water Act ("CWA"), 33 U.S.C. §1365 et seq. and 42 U.S.C. §7401 et seq. (1970), by the Plaintiff, seeking to protect the water supply and air quality of its citizens against violations of the terms and provisions of the CWA and CAA by past, present and ongoing violations by Defendants.

3.      Plaintiff also asks this Court to exercise supplemental jurisdiction over State common law claims by which it seeks declaratory and injunctive relief and damages caused by the Defendants ongoing illegal activities by way of their illegal business operation which has and continues to operate without the consent or approval of Plaintiff and/or any State agency.

## JURISDICTION

4.      This Court has jurisdiction over the claims set forth herein pursuant to 33 U.S.C. § 1365(a) of the CWA; 42 U.S.C. § 7604(a) of the CAA; 28 U.S.C. § 1331, 1345 and 1355 (federal question jurisdiction); and 28 U.S.C § 1332(a0(1) (diversity jurisdiction). The relief sought is authorized by, among other statues, laws and regulations 33 U.S.C § 1319(c), (d);  42 U.S.C § 7604(d), (e), (g); 42 U.S.C. § 7413(d),(e);and 28 U.S.C. §§ 2201(a) and 2202.  The matter in controversy exceeds the sum or value of $75,000.00.

5.      This Court further has supplemental and/or ancillary jurisdiction over the state law causes of action.  28 U.S.C § 1367(a).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to the causes of action took place within the district, the Plaintiff resides in the

district, and one or more Defendants reside in the district within the meaning of 28 U.S.C. § 1391(b), (d).

## NOTICE

7.      Notice of the commencement of this action has been given to all Defendants in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b) and Section 304(a)(2) of the CAA, 42 U.S.C. § 7604(a)(2), by the filing of a 60-Day Notice served on them on the 21st day of July 2020. The Defendants have failed to resolve this action during the 60-day period to enter a settlement of this matter to avoid litigation and thus all conditions precedent to the commencement of this action have been satisfied.

## THE PARTIES

8.      The Plaintiff TOH is a municipality duly organized and existing under and by virtue of the laws of the State of New York and is located at 1 Washington Street, Hempstead, New York 11550.

9.      The premises which form the basis of this action are located at (1) 55 New Street, Oceanside, New York, more specifically known Section 43, Block 281 and Lot 197 as designated on the TOH Tax Map and (2) 500 Wood Street, Oceanside, New York , more specifically known as Section 43, Block 194 Lot 117 as designated on the TOH Tax Map (hereinafter "Property" and/or "Premises"). The Premises are located in Nassau County, State of New York.

10.      Upon information and belief, that at all times hereinafter mentioned, Defendant OCEANSIDE INDUSTRIAL is a corporation duly organized and existing under the laws of the

State of New York and has a principal place of business at 500 Wood Street, Oceanside, New York 11572.

**11.**    Upon information and belief, that at all times hereinafter mentioned, Defendant KOPSICK is a resident of the County of Delaware, State of Pennsylvania with an address of 199 Copples Lane, Wallingford, PA 19086.

**12.**    Upon information and belief, that at all times hereinafter mentioned, Defendant MAAD CONSTRUCTION is a corporation duly organized and existing under the laws of the State of New York and  has a principal place of business at 55 New Street, Oceanside, New York 11572 with a further address of 199 Copples Lane, Wallingford, PA 19086.

**13.**    Upon information and belief, that at all times hereinafter mentioned, Defendant ML TRUST, has a principal place of business at 55 New Street, Oceanside, New York 11572.

**14.**    Upon information and belief, that at all times hereinafter mentioned, Defendant CONROC RECYCLING, is a corporation duly organized and existing under the laws of the State of New York and has a principal place of business at 55 New Street, Oceanside, New York 11572.

**15.**    Upon information and belief, that at all times hereinafter mentioned, Defendant IROC INDUSTRIES is a corporation duly organized and existing under the laws of the State of New York and has a principal place of business at 55 New Street, Oceanside, New York 11572.

**16.**    Upon information and belief, that at all times hereinafter mentioned, Defendant CONROC CONSTRUCTION is a corporation duly organized and existing under the laws of the State of New York and has a principal place of business at 55 New Street, Oceanside, New York 11572.

17.     Upon information and belief, that at all times hereinafter mentioned, Defendant NERAK  CONSTRUCTION is a corporation duly organized and existing under the laws of the State of New York and has a principal place of business at 55 New Street, Oceanside, New York 11572.

18.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLS has a principal place of business at 55 New Street, Oceanside, New York 11572.

19.     Upon information and belief, that at all times hereinafter mentioned, Defendant DL has a principal place of business at 55 New Street, Oceanside, New York 11572.

20.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLJ has a principal place of business at 55 New Street, Oceanside, New York 11572.

21.     Upon information and belief, that at all times hereinafter mentioned, Defendant ADL has a principal place of business at 55 New Street, Oceanside, New York 11572.

22.     Upon information and belief, that at all times hereinafter mentioned, Defendant KOPSICK is an owner, officer, director and/or managing member of Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

23.     Upon information and belief, that at all times hereinafter mentioned, Defendant KOPSICK exercised full control over Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

24.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLS is an owner, officer, director and/or managing member of Defendants OCEANSIDE

INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

25.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLS exercised full control over Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

26.     Upon information and belief, that at all times hereinafter mentioned, Defendant DL is an owner, officer, director and/or managing member of Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

27.     Upon information and belief, that at all times hereinafter mentioned, Defendant DL exercised full control over Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

28.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLJ is an owner, officer, director and/or managing member of Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

29.     Upon information and belief, that at all times hereinafter mentioned, Defendant MLJ exercised full control over Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

30.     Upon information and belief, that at all times hereinafter mentioned, Defendant ADL is an owner, officer, director and/or managing member of Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

31.     Upon information and belief, that at all times hereinafter mentioned, Defendant ADL exercised full control over Defendants OCEANSIDE INDUSTRIAL, MAAD CONSTRUCTION, ML TRUST, CONROC RECYCLING, IROC INDUSTRIES, CONROC CONSTRUCTION, and NERACK CONSTRUCTION.

32.     Upon information and belief, that at all times hereinafter mentioned, Defendants operate a trade waste business out of 55 New Street, Oceanside, New York and 500 Wood Street, Oceanside, New York.

## FACTS

33.     According to the Deed filed and maintained in the Clerk's Office of the County of Nassau, State of New York, Defendant OCEANSIDE INDUSTRIAL purchased the Premises from NWW Associates, Ltd. on or about January 16, 1998.

34.     Upon information and belief, at all times, OCEANSIDE INDUSTRIAL'S sole shareholders are MLS and DL.

35.     At some point between January 1998 and the present, the Premises were transferred to Defendant KOPSICK.

36.     Upon information and belief, the Premises was transferred to Defendant KOPSICK due to the convictions of MLS and/or DL of felony counts, including, but not limited to, racketeering and mail fraud.

37.     MLS and DL are barred for their lifetimes from having trade waste contracts with local, state, or federal government entities.  (*See* **Exhibit A**).

38.     Defendant MLJ attempted to obtain a carting license or registration authorizing himself and the business to operate a trade waste business from New York City but was denied these licenses based on several factors, including, but not limited to, the criminal convictions of MLS and DL, the involvement of MLS and DL in the business operations from which they had been barred due to their criminal convictions, and the misleading application submitted by MLJ.

39.     Upon information and belief, MLS and DL continue to operate the facility in violation of their lifetime bar from same.

40.     Neither the Premises nor the Defendants ever were licensed by the TOH, Nassau County, the State of New York or the federal government to conduct a trade waste business involving the crushing of construction debris at or on the Premises.

41.     More precisely, the Defendants commenced their illegal operation of crushing bricks and other construction debris on the Premises without any Town, County, State or Federal permits.

42.      For approximately twenty (20) years, Defendants have been conducting an illegal and unlicensed business on the Premises.

43.     Defendants do not now have and have never had a carting license or registration authorizing it to operate a trade waste business in the TOH.

44.     Defendants have a Certificate of Occupancy ("CO") for the Premises which permits Defendants to maintain a one (1) story shop and a two (2) car garage on the Premises only.

45.    There are structures and vehicles located on the Premises for which Defendants do not have permits and which are in violation of the CO and for which Defendants do not have a CO.  These structures and vehicles include, but are not limited to, a crushing machine, unregistered vehicles, a "shack" like structure that has no CO, a deteriorating "block" wall on the property line, an illegal stand pile of expired tires for heavy equipment, an illegally built cesspool, and the stacking of debris in excess of fifteen (15) feet high against the property lines.

46.    These structures and vehicles are facilitating the Defendants' illegal activities.

47.    Since on or about 2012, the Defendants have caused damage from the emissions of hazardous and toxic substances into the air, soil, surface water and groundwater in the nearby residential properties and water ways; and have created noxious and offensive odors, vibrations, noise, high dust levels from their brick/concrete and construction debris crushing operation on the Premises.

48.    The dust, noise and vibrations caused by Defendants' illegal activities is interfering with the use and enjoyment of the neighboring and adjoining properties.

49.    The neighboring and adjoining properties repeatedly have become covered with dust particles from the Defendants' illegal brick/concrete and construction debris crushing operation.

50.    Defendants' conduct violates the Town of Hempstead's unreasonable noise law under Article I section 144(M)(N).

51.    Defendants' conduct violates the Clean Air Act under 42 U.S.C § 7401 et seq. (1970).

52.    The unauthorized and illegal operations at the facility has caused a nuisance to the neighboring and adjoining properties.

53.     For example, Oceanside Marine, Inc., a neighbor of Defendants, has had its property and the property of its clients covered in dust particles from the Defendants' illegal activities and has incurred additional costs related to cleaning up the dust particles.

54.     The Defendants have been notified and warned about the deteriorating and dangerous "block" wall on numerous occasions.  The "block" wall has and continues to create an unsafe and dangerous condition for pedestrians and neighboring property owners.

55.     Code Enforcement Officers of the TOH have requested on more than once that the Defendants remove the debris, cease their illegal operations, remove the illegally stored vehicles, and repair the "block" wall and shack.  Defendants have ignored all such requests.

56.     The noxious and offensive odors emanating from the Premises, in conjunction with the dust and vibrations caused by the illegal debris crushing operation (causing dust with high levels of silica- a cancer causing agent), have created potentially serious health issues for the TOH residents who are subjected to this nuisance and trespass.

57.     The clients and employees of the businesses neighboring the Premises complain of the unreasonable noise from the Defendants' illegal activities.

58.     The Defendants have construction trucks lined up and down the street idling at all hours of the day and on weekends and holidays.

59.     The Defendants have washed theses construction trucks on the roadways letting the contaminated water into the street sewer lines.

60.     The Defendants' trucks have caused damage to the roadway.

61.     The weight of the heavy equipment is ripping up the TOH roadways and has caused damage to the Plaintiff's sewer lines on New Street.

62.     Defendants' trucks emit noxious fumes and odors and cause pollution as they idle.

63.     Defendants trucks are left to idle with no driver in the truck causing an unsafe and dangerous situation.

64.     Defendants' trucks further cause unreasonable noise, pollution and congestion on the roadways and inhibit and block parking opportunities for the neighboring and adjoining property owners and their clients and customers.

65.     The Premises are located in Oceanside, New York, which is on the water.  The dust, debris and leachate from the Defendants' illegal activities gets into the waterways adjacent to the Premises and from there travels to navigable waters.

66.     The Defendants, therefore, are discharging pollutants into navigable waters in violation of the Clean Water Act.

67.     Defendants' conduct violates the Clean Water Act under 33 U.S.C. § 1365 et seq.

68.     Over the past several years, numerous actions have been brought against Defendants in the District Court for the violations of the Building Code and the CO.  Despite the fines levied upon them, the Defendants continue to conduct illegal operations on the Premises

69.     The TOH has made every attempt to resolve this issue with the Defendants and has been completely frustrated with the Defendants' refusal to cease their illegal operations.  It has become clear that Defendants will not cease their illegal operations unless and until they are enjoined by this Court.

70.     Defendants' illegal conduct continues to create a nuisance and trespass to their neighboring properties and the TOH residents as a whole.

### AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF THE CLEAN AIR ACT

**71.**     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 70 inclusive as if fully set forth at length herein.

**72.**     The Clean Air Act ("CAA") regulates air emissions from stationary and mobile sources.   42 U.S.C. §7401 et seq. (1970).  Its underlying purpose is to protect the public health and environment.

**73.**     The objective of the CAA  is for the federal government to work with the states to promote the public health and welfare by protecting and enhancing the quality of the nation's air, and to encourage and assist in the development and operation of regional air pollution prevention and control programs. 42 U.S.C. §§ 7401(b)(1)and (4).

**74.**     The CAA unambiguously authorizes suits "against any person who … constructs any new or modified major emitting facility without a permit."  42 U.S.C. § 7604(a)(3).   The CAA, thus, expressly authorizes suits against persons who propose to construct or who do construct major facilities without the proper permits.

**75.**     Defendants do not have a permit for any of the structures on the Premises or to operate a concrete brick, concrete and cinder block and construction debris crushing operation on the Premises.

**76.**     It is a violation of the CAA to release hazardous or noxious pollutants into the air.

**77.**     Defendants have created noxious and offensive odors, vibrations, unreasonable dust levels from the crushing operation, and unreasonable vibrations and noise from their unlicensed and illegal brick, concrete and construction debris crushing operation on the Premises.

78.     Vibrations caused by the Defendants' illegal debris crushing operation cause dust with high levels of silica, a cancer-causing agent, to be released into the air.  This has created potentially serious health issues for the TOH residents in the vicinity of the Premises, who are exposed to the dust and noxious fumes and odors from the Premises.

79.     Defendants have construction trucks lined up and down the street idling at all hours of the day and on weekends and holidays.  The trucks cause unreasonable noise and congestion and emit noxious fumes and odors and cause pollution as they idle.

80.     The Defendants' trucks have caused damage to the roadway.  For example, the weight of the heavy equipment is ripping up the TOH roadways and has caused damage to the Plaintiff's sewer lines on New Street.

81.     Defendants have and continue to violate the Clean Air Act.

82.     Plaintiff has incurred, and will continue to incur, damages as a result of Defendants' violation of the Clean Air Act in an amount to be determined at trial but no less than $75,000.00.

83.     Plaintiff hereby requests that the Defendants be ordered to immediately cease their construction and debris crushing business and that they be permanently enjoined from continuing said business.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF THE ENVIRONMENTAL CONSERVATION LAW

84.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 83 inclusive as if fully set forth at length herein.

85.     Article 19 of the Environmental Conservation Law, entitled the "Air Pollution Control Act" (the "Air Act") was enacted to safeguard the air resources of the State of New York by controlling or abating air pollution from new and existing sources.  ENV §19-0105.

86.     The Air Act authorizes state regulation of the emission of air pollution or contaminants from any source.

87.     Air pollution is defined as the presence of one or more air contaminants- that is, dust, fumes, mist, gas, odor, smoke, vapor, pollen, noise or any combination thereof- in quantities or of a duration which is injurious to the life or property or which unreasonably interferes with "the conformable enjoyment of life and property." ENV §19-0107 (2)(3).

88.     It is a violation of the Air Act to cause or allow the emission of air contaminants to the outdoor atmosphere of such quantity, characteristic or duration which are injurious to human, plant or animal life or to property, or which unreasonably interfere with the comfortable enjoyment of life or property. 6 NYCRR § 211.1.

89.     This prohibition applies, but is not limited to, any particulate, fume, gas, mist, odor, smoke, vapor, pollen, toxic or deleterious emission, either alone or in combination with others.  6 NYCRR § 211.1.

90.     All air contamination sources must obtain a state permit which contains conditions to ensure compliance with both the federal Clean Air Act and the state Air Act.

91.     The Defendants never obtained any such state permits.

92.     The Defendants have and continue to pollute the air in direct violation of the Air Act and continue to pollute the air causing high silica levels.

93.     Defendants' illegal debris crushing operation causes dust and vibrations which cause dust to be released into the air with high levels of silica, a cancer-causing agent.

94.     Defendants' illegal activities and violation of the Air Act have created potentially serious health issues for the TOH residents who are subjected to the vibrations, dust and pollution caused by Defendants.

95.     Plaintiff has incurred, and will continue to incur, damages as a result of Defendants' violation of the Air Act in an amount to be determined at trial but no less than $75,000.00.

96.     Plaintiff hereby requests that the Defendants be ordered to immediately cease their construction and debris crushing business and that they be permanently enjoined from continuing said business.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE CLEAN WATER ACT**

97.     Plaintiff repeats and reiterates each and every allegation contains in paragraphs 1 through 96 inclusive as if fully set forth at length herein.

98.     The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251 (a).  To that end, the CWA prohibits the unlawful "discharge of any pollutant by any person" into the waters of the United States, the contiguous zone, or bays and sounds. 33 U.S.C. § 1311(a), 402(a) of the CWA, 33 U.S.C. § 1342(a).  The Defendants have failed to comply with the CWA and as a result, there is ongoing contamination of the surrounding waterways.

99.     The CWA prohibits the discharge of any pollutant by any person. 33 U.S.C. 1311(a) et seq.

100.    "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

101.    A pollutant is defined as biological materials discharged into water.  33 U.S.C. § 1362(6).

102.    The United States Supreme Court recently ruled that pollutants traveling through navigable waters indirectly through groundwater is the "functional equivalent" of a direct discharge, and, thus, the CWA applies.  *City of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462 (2020).  As the Supreme Court noted, "virtually all water, polluted or not, eventually makes its way to navigable water.  *Id.*

103.    The Premises are located in Oceanside, New York, which is on the water.

104.    The dust, debris and leachate from the illegal activities of the Defendants gets into the waterways adjacent to the Premises and from there travels to navigable waters.

105.    The Defendants, therefore, are discharging pollutants into navigable waters in violation of the CWA.

106.    Violators of the CWA are subject to a civil penalty "not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319.

107.    In determining the amount of a civil penalty, courts consider, "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C.. § 1319.

108.    Defendants have been instructed repeatedly to cease their illegal activities and have been defendants in numerous state actions stemming from their illegal activity.  They have continued to engage in illegal activities which have resulted in violations of the CWA.  The maximum penalty, therefore, is appropriate.

109. Plaintiff has incurred, and will continue to incur, damages as a result of Defendants' violation of the Clean Water Act in an amount to be determined at trial but no less than $75,000.00.

110. Plaintiff hereby requests that the Defendants be ordered to immediately cease their construction and debris crushing business and that they be permanently enjoined from continuing said business.

### AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF TOH'S NOISE LAW

111. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 110 inclusive as though fully set forth at length herein.

112. Excessive sound and vibration are hazards to the public health, welfare, safety and quality of life; and a substantial body of science and technology exists through which excessive sound and vibration may be substantially abated.

113. The TOH adopted the Noise Law because it was mindful that the residents of the TOH are entitled to live in an environment free from excessive sound and vibration which may deprive health, welfare or safety or degrade the quality of life.

114. It is the policy of the TOH to prevent excessive sound and vibration which may jeopardize the health, welfare or safety of its citizens or degrade the quality of life.

115. The TOH Noise Law applies to the control of all sound and vibration originating within the limits of the Town of Hempstead.

116. The Premises are located within the TOH. The Premise, therefore, are subject to the Noise Law.

117. Defendants are conducting business within the TOH. Defendants, therefore, are subject to the TOH Noise Law.

**118.**   Pursuant to the TOH's Noise Law, it is "unlawful and an offense against this chapter for any person to unreasonably make, continue or cause to be made or continued any unreasonable noise or noise disturbance."  TOH Noise Law Article I Section 144-2A.

**119.**   TOH's Noise Law prohibits, "[o]perating or permitting the operation of any mechanical powered saw, sander, drill, grinder, lawn or garden tool, snowblower or similar device, which creates an unreasonable noise across a real property boundary other than between the hours of 8:00 a.m. and 9:00 p.m. on Saturdays and Sundays, and between the hours of 7:00 a.m. and 9:00 p.m. on Mondays through Fridays." TOH Noise Law Article I Section 144-3M.

**120.**   TOH's Noise Law also prohibits the "operation of any machinery, equipment, pump, fan, exhaust fan, attic fan, air-conditioning apparatus or similar mechanical device in such a manner as to create an unreasonable noise across a real property boundary." TOH Noise Law Article I Section 144-3N.

**121.**   Defendants' concrete and debris crushing operations cause unreasonable noises at all hours of the day and night and on weekends which interfere with the ability of the adjoining and neighboring property owners to peacefully enjoy their property and/or conduct their businesses.

**122.**   Defendants' operation of a concrete and debris crushing business violates the TOH Noise Law.

**123.**   Defendants have been notified of their violation of the TOH Noise Law.

**124.**   Defendants have not ceased their violations of the TOH Noise Law.

**125.**   Plaintiff TOH and the residents and businesses adjoining and neighboring the Premises have been damaged by Defendants' violation of the TOH Noise Law in an amount to be determined at trial.

126.    Plaintiff hereby requests that the Defendants be ordered to immediately cease their construction and debris crushing business and that they be permanently enjoined from continuing said business.

## AS AND FOR A FIFTH CLAUSE OF ACTION
## PUBLIC NUISANCE ABATEMENT

127.    Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 126 inclusive as though fully set forth at length herein.

128.    Defendants' illegal activities are endangering the property, health and/or safety of the adjoining and neighboring property owners.

129.    Defendants' are unlawfully obstructing public streets.

130.    Defendants' illegal activities are an invasion of the adjoining and neighboring property owners' interest in their respective properties.

131.    Defendants' illegal activities constitute a public nuisance.

132.    Defendants have been notified that their concrete and debris crushing operation is illegal.

133.    Defendants have not ceased operating their illegal business.

134.    Plaintiff TOH and the residents and businesses adjoining and neighboring the Premises have been damaged by Defendants' public nuisance in an amount to be determined at trial.

135.    Plaintiff hereby requests that the Defendants be ordered to immediately abate their public nuisance by ceasing their construction and debris crushing business and that they be permanently enjoined from continuing said business.

## AS AND FOR A SIXTH CAUSE OF ACTION
### NEGLIGENCE

**136.**   Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 135 inclusive as though fully set forth at length herein.

**137.**   The Defendants acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment, in furtherance of the business of the Defendants.

**138.**   At all relevant times, the Defendants had a duty to operate their business in a reasonable, safe and prudent manner, so as not to cause damage from the emissions of hazardous and toxic substances into the air, soil, surface water and groundwater in the nearby residential properties.

**139.**   At all relevant times, the Defendants knew or should have known, that the hazardous and toxic substances discharged were contaminating the air, soil, surface water and groundwater at the Tonawanda Coke Plant facility and the surrounding areas and Plaintiffs and nearby properties.

**140.**   At all relevant times, the Defendants breached their duty of care by failing to safely and properly remove, discharge and remediate their hazardous and toxic wastes and/or emissions and failed to advise or warn the Plaintiff of the dangers emanating from the discharge of hazardous and toxic substances into the air, soil, surface water and groundwater.

**141.**   The Defendants failed to use reasonable care to safeguard those residing on nearby premises from property damage, loss of quality of life, and an increased risk of developing serious bodily injury, including cancer.

**142.**   As a result of the Defendants' acts and omissions, contamination was documented as being present in the surrounding area and the community.

**143.**     As a direct and proximate result of the acts and omissions of the Defendants, (1) Plaintiff will suffer the future costs of monitoring for the effects of ingesting, inhaling and/or absorbing the hazardous and toxic substances discharged by the Defendants in the manner set forth above; and (2) Plaintiff seeks punitive damages based upon Defendants' deliberate acts and omissions.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## STRICT LIABILITY

**144.**     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 143 inclusive as though fully set forth at length herein.

**145.**     The Defendants acts and omissions, which resulted in the discharge of hazardous and toxic substances emanating from the Premises and onto the surrounding areas and nearby properties, constituted an abnormally dangerous and/or ultra-hazardous activity.

**146.**     The Defendants are strictly liable for the aforementioned damages, which directly resulted from the Defendants engaging in abnormally dangerous or ultra-hazardous activities.

**147.**     As a direct and proximate result of the acts and omissions of the Defendants, (1) Plaintiff will suffer the future costs of monitoring for the effects of ingesting, inhaling and/or absorbing the hazardous and toxic substances discharged by the Defendants in the manner set forth above; and (2) Plaintiff seeks punitive damages based upon Defendants' deliberate acts and omissions.

## AS AND FOR A EIGHT CAUSE OF ACTION
## TRESPASS

**148.**     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 147 inclusive as though fully set forth at length herein.

149.     The Defendants negligently, wantonly, recklessly, intentionally, unreasonably, or through its participation in abnormally dangerous activities, discharged hazardous and toxic substances which contaminated the air, soil, surface water and groundwater at the Premises and onto the surrounding areas and nearby property.

150.     The Defendants' actions have knowingly and intentionally or negligently intruded upon, invaded, violated and infringed upon the property rights of Plaintiff's residents and will have the effect of continued intrusion, invasion, violation and infringement upon the surrounding businesses and neighbors' property rights, including, but not limited to, the rightful use and quiet enjoyment thereof, the ability to gain and profit economically from the surrounding properties, and damage and stigma to the surrounding properties.

151.     As a direct and proximate result of the acts and omissions of the Defendants, (1) Plaintiff will suffer the future costs of monitoring for the effects of ingesting, inhaling and/or absorbing the hazardous and toxic substances discharged by the Defendants in the manner set forth above; and (2) Plaintiff seeks punitive damages based upon Defendants' deliberate acts and omissions.

## AS AND FOR A NINTH CAUSE OF ACTION
## NUISANCE

152.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 151 inclusive as though fully set forth at length herein.

153.     The Defendants negligently, wantonly, recklessly, intentionally, unreasonably, or through its participation in abnormally dangerous activities, discharged hazardous and toxic substances which contaminated the air, soil, surface water and groundwater at the Premises and onto the surrounding areas and nearby properties.

**154.**    The Defendants' release of hazardous and toxic substances has caused and will continue to cause an unreasonable and substantial interference with the property rights of Plaintiff's residents, including, but not limited to, the rightful use and quiet enjoyment thereof, the ability to gain and profit economically from the property, and damage and stigma to said properties.

**155.**    As a direct and proximate result of the acts and omissions of the Defendants, (1) Plaintiff will suffer the future costs of monitoring for the effects of ingesting, inhaling and/or absorbing the hazardous and toxic substances discharged by the Defendants in the manner set forth above; and (2) Plaintiff seeks punitive damages based upon Defendants' deliberate acts and omissions.

## AS AND FOR A TENTH CAUSE OF ACTION
## INJUNCTION

**156.**    Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 155 inclusive as though fully set forth at length herein.

**157.**    Defendants are operating a concrete and debris crushing operation without the proper license or registration.

**158.**    Defendants have placed structures on the Premises for which they do not have a CO.

**159.**    Defendants have created noxious and offensive odors, vibrations, unreasonable dust levels from the crushing operation and unreasonable vibration and noise from their unlicensed and illegal brick, concrete and construction debris crushing operation on the Premises.

**160.**    Defendants' illegal debris crushing operation causes dust and vibrations which cause dust to be released into the air with high levels of silica, a cancer-causing agent.

161.    The dust, debris and leachate from the illegal activities of the Defendants gets into

the waterways adjacent to the Premises and from there travels to navigable waters.

162.    Defendants' illegal activities constitute a public nuisance.

163.    Defendants illegal activities are in violation of the TOH's noise law.

164.    Defendants illegal activities are in violation of the CAA and the Air Act.

165.    Defendants illegal activities are in violation of the CWA.

166.    Defendants should be preliminarily and permanently enjoined from continuing

their illegal activities.

**WHEREFORE**, PLAINTIFF demands judgment against the DEFENDANTS as follows:

a.    Damages in an amount to be determined at trial, which shall exceed the Court's
minimum jurisdiction, plus court costs, attorney's fees and interest from the date such amount
was due and owing;

b.    A preliminarily and permanent injunction enjoining Defendants from engaging in
the illegal activities complained of herein; and

c.    Costs, disbursements and legal fees associated with the bringing of this action,
and any further relief this court deems just and proper.


Dated: October 1, 2020

Respectfully submitted,
BISCEGLIE & ASSOCIATES, P.C.


Angelo R. Bisceglie, Jr., Esq. (ARB9251)
1527 Franklin Avenue, Ste. 301
Mineola, New York 11501
(516) 414-2900
(888) 688-4206 (FACSIMILE)

# Exhibit A



The City of New York
**BUSINESS INTEGRITY COMMISSION**
**100 Church Street · 20th Floor**
**New York · New York 10007**
**Tel. (212) 437-0555 · Fax (646) 500-7096**

## DECISION OF THE BUSINESS INTEGRITY COMMISSION DENYING THE REGISTRATION APPLICATION OF MAAD CONSTRUCTION INC. (BIC #4046) TO OPERATE AS A TRADE WASTE BUSINESS

### Introduction

MAAD Construction Inc. ("MAAD Construction" or the "Applicant") (BIC #4046) has applied to the New York City Business Integrity Commission (the "Commission") for an exemption from licensing requirements and a registration to operate a trade waste business "solely engaged in the removal of waste materials resulting from building demolition, construction, alteration or excavation" – a type of waste commonly known as construction and demolition debris, or "C & D." See Title 16-A of the New York City Administrative Code ("Administrative Code" or "Admin. Code") §16-505(a).

On September 15, 2015, the staff issued and personally served the Applicant with Notice to MAAD Construction Inc. of the Grounds to Recommend the Denial of the Registration Application of MAAD Construction Inc. to Operate as a Trade Waste Business ("Notice of Denial").[1] See Affidavit of Service dated September 17, 2015. The Applicant had 10 business days to respond to the Notice of Denial, which period expired on September 30, 2015. See Title 17 Rules of the City of New York ("RCNY") section 2-08(a). The Applicant did not submit any response. The Commission has now completed its review of MAAD Construction's application, having carefully considered the Commission staff's Notice of Denial and the Applicant's failure to respond. Based upon the record as to the Applicant, the Commission denies the Applicant's registration application based on the following independently sufficient reasons:

**A. The Applicant knowingly associated with individuals who have been convicted of racketeering activities;**

**B. The Applicant provided false and misleading information to the Commission; and**

**C. The Applicant repeatedly engaged in unregistered trade waste removal activity.**

### Background and Statutory Framework

Every commercial business establishment in New York City must contract with a private carting company to remove and dispose of the waste it generates. Historically, the private carting industry in the City was operated as a cartel controlled by organized crime. As evidenced by

---

[1] As discussed below, Michael A. Loguidice, the disclosed principal's father, accepted service on his son's behalf at the business location provided by the Applicant to the Commission. See Memo dated September 16, 2015.

numerous criminal prosecutions, the industry was plagued by pervasive racketeering, anticompetitive practices and other corruption. See e.g., United States v. International Brotherhood of Teamsters (Adelstein), 998 F.2d 120 (2d Cir. 1993); People v. Ass'n of Trade Waste Removers of Greater New York Inc. et al., Indictment No. 5614/95 (Sup. Ct. N.Y. Cty.); United States v. Mario Gigante et al., No. 96 Cr. 466 (S.D.N.Y.); People v. GNYTW, 701 N.Y.S.2d 12 (1st Dep't 1999). The construction and demolition debris removal sector of the City's carting industry has also been the subject of significant successful racketeering prosecutions. See United States v. Paccione, 949 F.2d 1183, 1186-88 (2d Cir. 1991), cert. denied, 505 U.S. 1220 (1992); United States v. Cafra, et al., No. 94 Cr. 380 (S.D.N.Y.); United States v. Barbieri, et al., No. 94 Cr. 518 (S.D.N.Y.); United States v. Caccio, et al., Nos. 94 Cr. 357, 358, 359, 367.

The Commission is charged with, *inter alia*, combating the pervasive influence of organized crime and preventing its return to the City's private carting industry, including the construction and demolition debris removal industry. Instrumental to this core mission is the licensing scheme set forth in Local Law 42, which created the Commission (then known as the "Trade Waste Commission") and granted it the power and duty to license and regulate the trade waste removal industry in New York City. NY Admin. Code §16-505(a). It is this licensing scheme that continues to be the primary means of ensuring that an industry historically plagued with corruption remains free from organized crime and other criminality, and that commercial businesses that use private carters can be ensured of a fair, competitive market.

Pursuant to Local Law 42, a company "solely engaged in the removal of waste materials resulting from building demolition, construction, alteration or excavation," commonly known as construction and demolition debris, or "C & D" removal, must apply to the Commission for an exemption from the licensing requirement. Id. If, upon review and investigation of an exemption application, the Commission grants the applicant an exemption from the licensing requirement, it issues the applicant a Class 2 registration. Id. Before issuing such registration, the Commission must evaluate the "good character, honesty and integrity of the applicant." Id. at §16-508(b). The New York City Administrative Code provides an illustrative list of relevant factors for the Commission to consider in making a licensing or registration decision:

1. failure by such applicant to provide truthful information in connection with the application;

2. a pending indictment or criminal action against such applicant for a crime which under this subdivision would provide a basis for the refusal of such license, or a pending civil or administrative action to which such applicant is a party and which directly relates to the fitness to conduct the business or perform the work for which the license is sought, in which cases the commission may defer consideration of an application until a decision has been reached by the court or administrative tribunal before which such action is pending;

3. conviction of such applicant for a crime which, considering the factors set forth in section seven hundred fifty-three of the correction

2

law, would provide a basis under such law for the refusal of such license;

4. a finding of liability in a civil or administrative action that bears a direct relationship to the fitness of the applicant to conduct the business for which the license is sought;

5. commission of a racketeering activity or knowing association with a person who has been convicted of a racketeering activity, including but not limited to the offenses listed in subdivision one of section nineteen hundred sixty-one of the Racketeer Influenced and Corrupt Organizations statute (18 U.S.C. §1961 et seq.) or of an offense listed in subdivision one of section 460.10 of the penal law, as such statutes may be amended from time to time, or the equivalent offense under the laws of any other jurisdiction;

6. association with any member or associate of an organized crime group as identified by a federal, state or city law enforcement or investigative agency when the applicant knew or should have known of the organized crime associations of such person;

7. having been a principal in a predecessor trade waste business as such term is defined in subdivision a of section 16-508 of this chapter where the commission would be authorized to deny a license to such predecessor business pursuant to this subdivision;

8. current membership in a trade association where such membership would be prohibited to a licensee pursuant to subdivision j of section 16-520 of this chapter unless the commission has determined, pursuant to such subdivision, that such association does not operate in a manner inconsistent with the purposes of this chapter;

9. the holding of a position in a trade association where membership or the holding of such position would be prohibited to a licensee pursuant to subdivision j of section 16-520 of this chapter;

10. failure to pay any tax, fine, penalty, or fee related to the applicant's business for which liability has been admitted by the person liable therefor, or for which judgment has been entered by a court or administrative tribunal of competent jurisdiction.

Id. at § 509(a)(i)-(x). Additionally, the Commission may refuse to issue a license or registration to any applicant who has "knowingly failed to provide information or documentation required by the Commission … or who has otherwise failed to demonstrate eligibility for a license." Id. at §509(b). The Commission also may refuse to issue a license or registration to an applicant when such applicant was previously issued a license which was revoked or not renewed, or where the

applicant "has been determined to have committed any of the acts which would be a basis for the suspension or revocation of a license." Id. at § 509(c). Finally, the Commission may refuse to issue a license or registration to any applicant where the applicant or its principals have previously had their license or registration revoked. Id. at § 509(d).

An applicant for a private carting license (including construction and demolition) has no entitlement to and no property interest in a license or registration and the Commission is vested with broad discretion to grant or deny a license or registration application. Sanitation & Recycling Industry, Inc., 107 F.3d at 995; see also Daxor Corp. v. New York Dep't of Health, 90 N.Y.2d 89, 98-100, 681 N.E.2d 356, 659 N.Y.S.2d 189 (1997); NY Admin. Code § 16-116.

## Statement of Facts

### Background

On January 19, 2011, the Applicant applied to the Commission for an exemption from the licensing requirement for the removal of construction and demolition debris. See Application for Exemption from Licensing Requirement for Removal of Construction and Demolition Debris (the "Registration Application"). In its application, the Applicant disclosed that it had one principal, the President and 100% owner, Michael Loguidice, Jr. ("Loguidice Jr."). See Registration Application at 13. The Applicant disclosed that the principal acquired ownership of the company on March 8, 2008, by "inheritance." See id. at 13. Loguidice Jr. certified that all the information contained in the Registration Application was "full, complete and truthful." Id. at 20. Neither of Loguidice Jr.'s parents, Michael A. Loguidice ("Loguidice Sr.") or Dorothy Loguidice (collectively, the "Loguidice Parents"), was disclosed in the Registration Application as principals or employees.

The Commission's investigation into the Applicant revealed that the Loguidice Parents have a significant role in the operations of the company and also have criminal histories. The Applicant sought to conceal the Loguidice Parents' involvement in the operations of the company due to their criminal histories. In addition, the Applicant knowingly and repeatedly operated without a registration, in an attempt to avoid the Commission's scrutiny.

On August 17, 2005, the Loguidice Parents were indicted by a federal grand jury in the Eastern District of New York on charges of Conspiracy to Launder Money, a racketeering activity. Specifically, on or about and between January 1, 1992 and December 31, 2003, the defendants were charged with conspiring to embezzle from employee pension funds, theft concerning programs receiving Federal funds, and mail fraud. See Indictment, U.S. v. Michael A. Loguidice and Dorothy Loguidice, CR-05-0626 (the "Indictment"). As part of the scheme, the Loguidice Parents submitted false certifications and other information to New York City and New York State agencies in order to obtain Disadvantaged Business Enterprise ("DBE") certification. Dorothy Loguidice's certified trucking and excavation company was awarded several contracts as a DBE, but Loguidice Sr.'s companies actually performed the work. As part of the conspiracy, the Loguidice Parents obtained a total of approximately $7.8 million in DBE subcontracts for which they were actually ineligible. See U.S. Department of Transportation, Office of Inspector General,

4

New York Construction Company Owners Sentenced to More Than 1 Year in Prison and Fined for DBE Fraud Scheme, March 13, 2008.

On March 21, 2006, the Loguidice Parents pled guilty to Conspiracy to Launder Money, in violation of 18 United States Code ("USC") sections 1956(h) and 1956 (a)(1)(B)(i). They both admitted that during the time period on or about and between January 1, 1992 and December 31, 2003, together with others, they committed mail fraud involving minority business enterprise contracts knowing that the property involved in the financial transactions represented proceeds of some form of unlawful activity, that is, mail fraud, and knowing that the transactions were designed to conceal the mail fraud. The contracts received were for trucking jobs on roadway improvement and other construction projects. See Transcript of Criminal Cause for Pleading (the "Plea") at 21-29.

On March 13, 2008, Loguidice Sr. and Dorothy Loguidice were each sentenced to a period of 15 months imprisonment and three years' supervised release. They forfeited $1.1 million to the United States government and paid, collectively, $900,000 to the Internal Revenue Service. See Consent Order of Forfeiture, dated April 3, 2006; Office of Inspector General supra. Each was also ordered to make restitution in the amount of $296,599.81. See Judgment in a Criminal Case, Michael A. Loguidice; Judgment in a Criminal Case, Dorothy Loguidice. The Loguidice Parents have paid the restitution in full. They both agreed to debarment from participating in federal, state or municipal contracts. See Plea at 19.

On January 19, 2011, the Registration Application was filed with the Commission. On February 4, 2011, "Mike Loguidice" called the Commission and inquired about the status of the Registration Application. The caller left Loguidice Sr.'s cellular telephone number as the call-back number.[2] See email dated February 4, 2011; transcript of sworn testimony of Loguidice Jr., dated August 10, 2011 ("Loguidice Jr. Tr.") at 130. On February 8, 2011, Loguidice Sr. called the Commission. He called from the same cellular telephone number provided days earlier and stated that he was calling on behalf of his son regarding the Registration Application. He stated that his son was busy "on a machine," was "bashful," and had asked Loguidice Sr. to call the Commission for him. See email dated February 8, 2011.

On or about March 18, 2011, Dorothy Loguidice called the Commission to inquire into the status of the Registration Application. She stated that she was calling on behalf of her son. She also stated that "we have contracts with Tully [Construction Co., Inc.] and we need the license to perform work." See email from John Mancino, dated March 18, 2011. She provided a call-back number that was her cellular telephone number. See id.; Loguidice Jr. Tr. at 112.[3]

On September 16, 2015, a Commission investigator appeared at the Applicant's place of business to personally serve the Notice of Denial. Loguidice Jr. was not at the location, but a man

---

[2] Loguidice Jr. testified during his sworn testimony before the Commission that his father's cellular telephone number is (516) 322-2887, which is the number provided by the caller who identified himself as "Mike Loguidice." Loguidice Jr. Tr. at 108.
[3] Dorothy Loguidice provided (516) 322-2764 as her cellular telephone number when she left a message for Commission staff. Additionally, Loguidice Jr. testified that this is his mother's cellular telephone number. See Loguidice Jr. Tr. at 112.

31-32; Violations Phone Message, dated 2/15/11. Additionally, Dorothy Loguidice answered this telephone line when a Commission investigator sought to contact Loguidice Jr. regarding service of the Notice of Denial. See Memo dated September 16, 2015.

With respect to the involvement of the Loguidice Parents in the Applicant's operations, Loguidice Jr. testified that neither his mother nor father has ever had any role in the Applicant business; neither has contacted the Commission on his behalf; Loguidice Jr. is the only one who deals with the customers; Loguidice Jr. is the only one who dispatches the trucks to job locations; and Loguidice Jr. is the only one in charge of day to day operations. See id. at 95, 102-03, 107-09, 112-13.[5]

Loguidice Jr. also testified he did not know that his father contacted the Commission about the status of the Registration Application; that his mother contacted the Commission about the status of the Registration Application; or that his mother negotiated the settlement of administrative violations on behalf of the Applicant. See id. at 109, 114-15, 141-42. Loguidice Jr. also claimed that although both of his parents are required to be employed as per the conditions of their supervised release, he does not know where either of them works. See id. at 42-43, 138.

As further described below, on September 20, 2010, October 29, 2010, and February 3, 2011, the Commission issued administrative violations against the Applicant for unregistered trade waste removal activity. The Applicant resolved those administrative violations by agreeing to pay fines. Loguidice Jr. testified that the Applicant has not operated in New York City since receiving those violations. See Loguidice Jr. Tr. at 70, 74. Further, he testified that he was awaiting the registration in order to accept various job opportunities in New York City, including a potential "Tully job." See id. at 69-74, 103, 119-20, 71-72. Notwithstanding that testimony, the Commission issued four additional violations to the Applicant for unregistered activity observed in June 2011. The evidence supporting those violations, which were issued after Loguidice Jr. testified, directly contradicts Loguidice Jr.'s claims that the Applicant was not engaged in unregistered activity after the February 3, 2011 violation for unregistered activity.

Unregistered Activity

On September 7, 2010, a Commission investigator observed a 1998 Peterbilt dump truck with the name "MAAD Construction" stenciled on the doors of the vehicle while it was being used to collect and transport trade waste from 4301 Berrian Blvd, Astoria, NY 11105. On September 20, 2010, a Notice of Violation was issued against the Applicant, and a hearing was scheduled for October 21, 2010. See Notice of Violation TW-6267. The Applicant entered into a stipulation of settlement with the Commission and paid a fine of $2,500.

On October 21, 2010, a Commission investigator observed a blue 2006 Kenworth tractor while being used to collect and transport trade waste from Putnam Avenue between Lewis Avenue and Marcus Garvey Blvd., Brooklyn, New York. On October 29, 2010, a Notice of Violation was issued against the Applicant, and a hearing was scheduled for November 18, 2010. See Notice of Violation, TW-6393. The Applicant failed to appear for the hearing.

---

[5] Notwithstanding this testimony, Loguidice Sr. was present at the business location when a Commission investigator served the Notice of Denial. See Memo dated September 16, 2015.

On January 4, 2011, a Commission investigator observed a 2000 Kenworth tractor with the words "Operated By MAAD Construction" marked on the vehicle while it collected trade waste from an excavation site located at 265-21 76th Avenue, Glen Oaks, New York. On February 3, 2011, a Notice of Violation was issued against the Applicant, and a hearing was scheduled for February 17, 2011. See Notice of Violation, TW-6595. The Applicant failed to appear for the hearing.

On January 11, 2011, a Commission investigator observed the same 2000 Kenworth tractor again at the same excavation site in Glen Oaks, New York, while such vehicle collected and transported trade waste. On February 3, 2011, a Notice of Violation was issued against the Applicant, and a hearing was scheduled for February 17, 2011. See Notice of Violation, TW-6596. The Applicant failed to appear for the hearing.

On February 15, 2011, Dorothy Loguidice contacted the Commission regarding the three violations that were outstanding at that time. She negotiated a settlement on behalf of the company for $8,000. As noted above, the call-back telephone number provided by Dorothy Loguidice was the same number painted on the Applicant's vehicles, a number not disclosed to the Commission in the Registration Application and which Loguidice Jr. claimed in his testimony is no longer used by the business. See Violations Phone Message, dated 2/15/11; Ann Marie Zanfardino notes dated 2/6/11; Dorothy Loguidice email dated 3/18/11; Loguidice Jr. Tr. at 128-129.

Although Loguidice Jr. testified that the email disclosed on the Registration Application, maadconstruction@gmail.com, is used only by him, (see Loguidice Tr. at 19), on March 18, 2011, Dorothy Loguidice emailed a Commission staff member from this email address regarding the settlement. She also made various representations regarding her wish to obtain temporary permission to operate from the Commission, the costs of doing business, and the hardship that the agreed-upon fine would cause for the business. Further, she stated that the company "must continue to work." See email from Dorothy Loguidice dated March 18, 2011. On or about April 29, 2011, the Applicant paid the $8,000 fine.

Less than two months later, on June 13, 2011, Commission investigators observed three of the Applicant's vehicles being loaded with trade waste, from the main roadbed of the westbound Long Island Expressway between 168th Street and 167th Street, in Queens, New York. The vehicles were registered to MAAD Construction, and had the name and business address of MAAD Construction on the vehicle. All three drivers of the vehicles were interviewed by Commission investigators. They all stated that they were working for the Applicant business, and that it was Loguidice Sr.'s company. See O'Brien report dated 6/13/11.

Specifically, one driver who was interviewed told Commission investigators that he had been employed for the past 15 years by "Big Mike," the owner of MAAD Construction. He affirmatively identified Big Mike as Loguidice Sr., not Loguidice Jr. Another vehicle operator who said that he had been working for MAAD Construction for the preceding three weeks, identified his boss as Loguidice Sr. The third vehicle operator stated that he had been employed by MAAD Construction and Loguidice Sr. for the preceding five-to-ten year period. See O'Brien report dated 6/13/11.

8

On June 15, 2011, Commission investigators again observed a vehicle registered to the Applicant collecting trade waste, dirt and concrete, from the same location in Queens, New York. The words "Operated by MAAD Construction" were painted on the vehicle. Commission investigators interviewed the operator of the vehicle, who stated that he works for MAAD Construction, which is operated by Loguidice Sr. and his wife, Dorothy. The driver further stated that because "Big Mike" is no longer allowed to enter into a union agreement with Local 282, he put the company in the son's name and leases the trucks to Deland Contacting Inc., a union Local 282 signatory company.[6] He also stated that they were working on a Tully job at the time.[7] See O'Brien Report dated 6/15/11.

As a result of the activities on June 13, 2011 and June 15, 2011, the Commission issued administrative violations for unregistered trade waste removal activity, the failure to have proper markings on a vehicle, and the failure to disclose an employee to the Commission. See Stipulation of Settlement, TW-7126, TW-7127, TW-7128, TW-7129, TW-7130. On January 18, 2012, the applicant admitted guilt and agreed to pay a fine of $10,000. The fine has been paid.

## Basis for Denial

### 1.    The Applicant knowingly associated with individuals who have been    convicted of racketeering activities.

The Commission may deny a license application of a business whose principals have had business dealings with known racketeers. See Admin. Code § 16-509(a)(v); SRI, 107 F.3d at 998. Section 16-509(a)(v) of the Administrative Code specifically states that racketeering activities include, but are not limited to, those delineated in 18 USC § 1961(1).

As discussed above, the Loguidice Parents were convicted of Conspiracy to Launder Money, in violation of 18 USC Sections 1956(h) and 1956 (a)(1)(B)(i), a racketeering activity as defined by 18 USC § 1961(1). Despite their convictions, the Loguidice Parents funded the operations of the Applicant, providing its vehicles and cash. They directed vehicles to job sites, communicated directly with the regulatory agency responsible for investigating the Applicant about the business' operations and potential jobs, and negotiated administrative settlements on behalf of the company. Further, the telephone number displayed to the public on the vehicles is the telephone line at the Loguidice Parents' home, a telephone number that was not the one disclosed to the Commission by the Applicant in the Registration Application and one that Dorothy Loguidice utilized for the Applicant business. Finally, the Applicant's employees corroborated the Commission's findings, confirming the Loguidice Parents' involvement in the company. At minimum, the Loguidice Parents participate in the operations of the business to a great extent. More likely, they directly or indirectly control the company and are undisclosed principals of it.

---

[6] This is further evidence of Loguidice Sr.'s control over the company. Loguidice Jr. testified that Deland Contracting Inc. leases the Applicant's trucks occasionally and uses its own drivers to operate those trucks. See Loguidice Jr. Tr. at 104-05, 118-20, 125-27. However, this testimony is refuted by the credible evidence in this matter, i.e., the statements of all the drivers and the fact that the Applicant admitted liability and paid a fine for the above-referenced unregistered activity.

[7] Although Loguidice Jr. testified that he was waiting to accept work from Tully until the Applicant received a registration, the driver's statement demonstrates otherwise.

9

Thus, the Applicant maintained a business relationship with the Loguidice Parents, both convicted racketeers, whose convictions relate directly to contracts in the trucking industry. The Applicant has not refuted this point. Accordingly, the Commission denies MAAD Construction's Registration Application based on this independently sufficient ground.

### 2. The Applicant provided false and misleading information to the Commission.

All Applicants must provide truthful and non-misleading information to the Commission. A knowing failure to do so is a ground for denial of the application. See Admin. Code §§16-509(a)(i), (b); Attonito v. Maldonado, 3 A.D.3d 415 (1st Dept. 2004); leave denied 2 N.Y.3d 705 (2004); Breeze Carting Corp. v. The City of New York, 52 A.D.3d 424, 860 N.Y.S.2d 103 (1st Dept. 2008). As discussed above, the Applicant provided the Commission with applications and other submissions that contained false and misleading information about, among other things, who is involved in the operations and management of the company.

#### False Statements During Sworn Testimony

Loguidice Jr. provided false sworn testimony before the Commission. Many of his responses to questions about the Loguidice Parents' involvement in the company and the company's illegal activity were simply not credible in light of the other evidence in this matter.

#### Failure to Disclose Association with Dorothy Loguidice and Loguidice Sr.

As discussed above, Loguidice Jr. testified before the Commission that neither of the Loguidice Parents had any involvement in the Applicant business in any manner. However, the evidence demonstrates that Dorothy Loguidice and Loguidice Sr. have both had significant involvement in the operations of the Applicant business. Both individuals, collectively, have had contact with at least four Commission employees regarding the status of the Registration Application, potential projects of the Applicant, administrative violations issued against the Applicant, and service of the Notice of Denial. Further, the Applicant's own employees stated that Loguidice Sr. and Dorothy Loguidice are running the company. It is likely that Loguidice Jr. lied about his parents' involvement in the company because he and his parents knew that their involvement might be an impediment to obtaining a registration from the Commission.

#### False Statements About Unregistered Activity

Loguidice Jr. testified before the Commission that since the Applicant received administrative violations from the Commission in January 2010, the Applicant ceased hauling trade waste in New York City. However, Commission investigators again observed the Applicant operating illegally in June 2011, less than two months before Loguidice Jr. provided this sworn testimony.

Four separate employees stated that they were working for MAAD Construction at the time they were stopped by Commission investigators for hauling trade waste without a registration. Moreover, MAAD Construction entered into a stipulation of settlement with the Commission, admitted guilt, and paid a fine of $10,000 related to this unregistered activity, thereby admitting

10

its misconduct and paying a fine for it. Consequently, there is no question that the company was, in fact, illegally operating at the time when Loguidice Jr. testified it was not. Viewed in the light most favorable to Loguidice Jr., this testimony demonstrates that he does not know the particulars of how his business is operating and who is operating it. Much more likely, Loguidice Jr.'s testimony on this issue was false.

### False Statement in the Registration Application

#### Failure to Disclose Principals

Schedule A of the Registration Application requests all information about the principals of the Applicant. "Principal" is defined as "every officer and director and every stockholder holding ten percent or more of the outstanding shares of a corporation ... and all persons participating directly or indirectly in the control of such business entity." Admin. Code § 16-501(d).

The Registration Application, certified as true by Loguidice Jr., disclosed Loguidice Jr. as the sole, 100% owner and officer of the Applicant. See Registration Application at 13. However, during his sworn testimony before the Commission, Loguidice Jr. testified that his sister, Andrea Doreen Loguidice, is the Vice President of the company with a 50% ownership interest it. See Loguidice Jr. Tr. at 12, 16, 21-22. When asked why the Registration Application failed to disclose his sister as a principal, he could provide no reasonable explanation. See id: at 21-22.

Additionally, the Applicant failed to disclose his parents as principals (or even employees) of the Applicant business. Yet, the evidence establishes that both Dorothy Loguidice and Loguidice Sr. funded the formation of the company and have direct and/or indirect control over the operations of the company. Dorothy Loguidice negotiated settlements on behalf of the company, and the Applicant's drivers identify Loguidice Sr. as the "boss" running the company.

The evidence demonstrates that Loguidice Jr., the Applicant's sole disclosed principal, has on numerous occasions provided false written and oral sworn statements to the Commission, the agency entrusted with regulating the industry in which the Applicant seeks to operate. The Applicant has not disputed this point. Loguidice Jr.'s blatant and continual false statements demonstrate that neither he nor the Applicant business possesses the requisite good character, honesty, and integrity to operate in the trade waste industry. Accordingly, the Commission denies the Registration Application based on this independently sufficient ground.

### 3.   The Applicant repeatedly engaged in unregistered trade waste removal activity.

The Commission is authorized to deny the registration application of a company that has engaged in unlicensed carting activity in the City of New York. See Admin. Code §§ 16-509(c)(ii), 16-513(a)(i), 16-505(a). The Applicant has never held a carting license or registration authorizing it to operate a trade waste business in New York City. Nevertheless, since its inception, the Applicant has continuously operated a trade waste removal business in the City of New York. Because it has never been authorized to do so, the Applicant's trade waste removal activity has been illegal.

11

As discussed above, the Commission issued eight violations against the Applicant for illegal operation of a trade waste business, from September 7, 2010 through June 15, 2011. Three of the Notices of Violation were issued prior to submission of the Registration Application. Then, when Loguidice Jr. provided sworn testimony before the Commission on August 10, 2011, he stated that the company stopped operating without the required registration after the February 2011 violation. He also testified that he did not take the "Tully job" because his company did not have the required registration. However, the Applicant was observed operating in June 2011. At the time of Loguidice Jr.'s sworn testimony, the violations had been observed by Commission investigators, but the Notices of Violation had not yet been served on the Applicant.

The Applicant's repeated unregistered or unlicensed activity, combined with its false statements as to its operations, demonstrates a blatant disregard for the Commission's rules and regulations. Not only did the Applicant continue to operate illegally after receipt of the first Notice of Violation, but it also did not submit the Registration Application until approximately four months after it was first observed operating illegally. Further, the disclosed principal appeared before the Commission and falsely testified that the Applicant stopped illegally operating when, in fact, the Applicant continued to operate. The circumstances demonstrate that the Applicant likely knew the Registration Application would be denied based on the involvement of convicted racketeers, and it consciously chose not to submit an application to the Commission, until it could no longer ignore the regulating entity. The Applicant has not refuted this point. Under the circumstances, the Applicant's repeated unregistered carting is strong evidence of the Applicant's lack of good character, honesty and integrity and merits the denial of its Registration Application. Accordingly, the Commission denies the Applicant's Registration Application based on this independently sufficient ground.

## Conclusion

The Commission is vested with broad discretion to issue a license or refuse to grant an exemption from the license requirement and issue a registration in lieu of a license to any applicant who it determines to be lacking in good character, honesty and integrity. The record as detailed above demonstrates that the Applicant lacks those qualities. Accordingly, based on the three independently sufficient grounds set forth herein, the Commission denies the Applicant's exemption application.

12

This denial decision is effective immediately. MAAD Construction Inc. may not operate as a trade waste business in the City of New York.

Dated: November 9, 2015

THE NEW YORK CITY
BUSINESS INTEGRITY COMMISSION

Daniel D. Brownell
Commissioner and Chair

Deputy Commissioner Robert Orlin
(Designee)
Department of Sanitation

Deputy General Counsel Tracy N. Wright
(Designee)
Department of Investigation

Commissioner Julie Menin
Department of Consumer Affairs

Acting Commissioner Andrew Schwartz
Department of Small Business Services

Inspector John Denesopolis
(Designee)
New York City Police Department

13